NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Micaela Sundholm, | |
| Plaintiff, | Civ. No. 14-1996 |
| v. | **OPINION** |
| eSuites Hotels LLC, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon three Motions to Dismiss Plaintiff Micaela Sundholm's Complaint filed by three groups of Defendants in this case.  (Doc. No. 15, 16, 32).[1] Plaintiff opposes each motion.  (Doc. No. 22, 40).  eSuites Defendants have also moved to strike Plaintiff's opposition briefs on the grounds that she did not comply with the applicable local rules and improperly submitted certifications containing new factual allegations.  (Doc. No. 42). Plaintiff opposes the Motion to Strike, and in addition, moves for leave to file an amended complaint in order to include newly uncovered facts and add claims in an amended complaint. (Doc. No. 56, 57).  Defendants oppose Plaintiff's Motion to Amend the Complaint.  (Doc. No.

---

[1] The groups of Defendants are: (1) eSuites Hotels, LLC, Gerald D. Ellenburg, Kevin E. Cline, and Bryan Langton (collectively, "eSuites Defendants") (Doc. No. 15); (2) OCS Capital Group, LLC, Gilbert M. Olguin, and Bruce Adams (collectively, "OCS Capital Defendants") (Doc. No. 16); and (3) Douglas H. Forsyth (Doc. No. 32).  Forsyth is an employee of Liberty Title Agency, LLC, which is also named as a Defendant; thus, the Court will refer to Forsyth and Liberty Title Agency collectively as "Liberty Title Defendants."  The last Defendant, David William Berger, filed notice of joinder in the eSuites Defendants' Motion to Dismiss.  (Doc. No. 35). Subsequently, a Motion to Withdraw as Attorney was filed by Berger's counsel, which was granted.  (Doc. No. 39, 64).

61-63).  Plaintiff did not file a reply to Defendants' opposition.  The Court has issued the

Opinion below based upon written submissions and without oral argument pursuant to Federal

Rule of Civil Procedure 78(b).  For the reasons stated herein, the Motions to Dismiss will be

granted in part and denied in part;[2] Defendants' Motion to Strike will be dismissed as moot; and

Plaintiff's Motion to Amend the Complaint will be granted in part and denied in part.

BACKGROUND

The present action before the Court involves an alleged Ponzi scheme in which Plaintiff

was a victim.  Plaintiff contends that in April 2008, Defendants conspired to engage in a

fraudulent hotel-development scheme through which they defrauded Plaintiff in the amount of

$200,000.

Plaintiff alleges that at some point prior to April 2008, Defendant David William Berger

solicited Plaintiff by email to invest in eSuites, a company Berger claimed was developing hotels

in Arizona, Florida, and North Carolina.  (Doc. No. 1 at para. 8, 17).  Berger also represented to

Plaintiff that the return on investment "'would be incredible' and . . . in excess of 40% per year."

(*Id*. at para. 18).  Berger then introduced Plaintiff to Defendants Kevin E. Cline and Gerald D.

Ellenburg, with whom Plaintiff also discussed the returns and success of eSuites.  (*Id.* at para.

19-20).  According to Plaintiff, Berger, Cline, and Ellenburg provided her with investment

information and requested that she invest $100,000 for 50,000 shares of eSuites.  (*Id*. at para.

20).

On April 14, 2008, Berger sent an email to Plaintiff suggesting that she invest in eSuites

by purchasing $100,000 worth of shares and by making an additional short-term loan of

---

[2] Unless otherwise stated, dismissal of a claim in this Opinion applies to all Defendants, including Berger.  To the extent that claims are not dismissed against Berger, they are conditioned upon Berger receiving proper service under Federal Rule of Civil Procedure 4.

$100,000.  (*Id*. at para. 21-22).  On or about April 18, 2008, Plaintiff wired $100,000 in payment to a bank account belonging to Defendant Cline.  (*Id*. at para. 24).  Plaintiff claims that she "has never received any stock certificates evidencing an ownership interest in eSuites."  (*Id*. at para. 25).

On April 25, 2008, Plaintiff made a second payment of $100,000 by check payable to eSuites Hotels.  (*Id*. at paras. 26-27; Doc. No. 57 at para. 40).  In exchange for the second payment, Defendants delivered to Plaintiff a Promissory Note dated April 25, 2008 and executed by Defendant Ellenburg.  (Doc. No. 1 at para. 27).  According to Plaintiff, Defendants sent her an unsigned Escrow Agreement dated April 25, 2008, "representing that the sum of $100,000 would be held by Defendants, Liberty Title Agency/Douglas H. Forsyth, for the benefit of Plaintiff."  (*Id*. at para. 28).  Defendants further provided Plaintiff with instructions for wiring funds to Liberty Title Company and Forsyth.[3]  (*Id*.).  Defendants also allegedly stated that the loan would be "guaranteed" by Defendants through an insurance policy from Liberty National Life Insurance Company.  (*Id*. at para. 31).  No insurance policy was issued.  (*Id*.).

Plaintiff claims that "through the calendar year 2011," Defendants continued to solicit additional money from her through false representations about the progress of eSuites."  (Doc. No. 1 at para. 35).  For example, on April 30, 2009, Plaintiff received an e-mail from Ellenburg with an attached letter from Gil Olguin of OCS Capital announcing that the state of Arizona had agreed to issue development bonds.  (Doc. No. 57 at para. 45-46, 74).  However, Plaintiff alleges that no bond financing was ever issued by the state of Arizona.  (*Id.*)  Plaintiff also asserts that

---

[3] It does not appear that Plaintiff followed these wire instructions; instead, she chose to send a $100,000 check payable to eSuites Hotels.  (Doc. No. 57 at para. 40).

she received unaudited financial statements from eSuites for the period through June 30, 2010, as well as Schedule K-1 forms for 2009 and 2011.  (Doc. No. 1 at para. 37-38).

On March 28, 2014, Plaintiff filed the Complaint currently before the Court, alleging that Defendants operated a fraudulent "Ponzi" scheme.  Plaintiff alleges nine Counts[4] that are relevant to the present motions:

Count I: Violation of § 12(1) of the Securities Act of 1933

Count II: Violation of § 12(2) of the Securities Act of 1933

Count III: Violation of § 17(a) of the Securities Act of 1933

Count IV: Violation of § 10(b) of the Securities Exchange Act of 1934

Count V: Violation of New Jersey Uniform Securities Law, N.J.S.A. 49:3-52

Count VI: Common Law Fraud

Count VII: Breach of Contract

Count VIII: Violation of N.J.S.A. 56:8 and N.J.A.C. 13:54A, the Consumer Fraud Act

Count IX: Violation of the Racketeering Influenced and Corruption Organization Act of 1970 ("RICO")

DISCUSSION

**A.  Legal Standard for a Motion to Dismiss**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  When considering a Rule 12(b)(6) motion, a district court should conduct a three-

---

[4] Where relevant, allegations in Plaintiff's Proposed Amended Complaint will be discussed, and additional counts added in the Proposed Amended Complaint will be addressed at the end of this Opinion.

part analysis.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must

'take note of the elements a plaintiff must plead to state a claim.'"  *Id.* (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded

factual allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  The court may disregard any

conclusory legal allegations.  *Id.*  Finally, the court must determine whether the "facts are

sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556

U.S. at 679).  Such a claim requires more than a mere allegation of an entitlement to relief or

demonstration of the "mere possibility of misconduct;" the facts must allow a court reasonably to

infer "that the defendant is liable for the misconduct alleged."  *Id.* at 210, 211 (quoting *Iqbal*,

556 U.S. at 678–79).

**B.  Analysis of Plaintiff's Claims**

   1.  <u>Count III: Plaintiff's Claim under § 17(a) of the Securities Act</u>

      Defendants assert that Plaintiff cannot bring a claim for a violation of § 17(a) of the

Securities Act because § 17(a) of the Securities Act does not create a private cause of action.

The relevant text of § 17(a) provides the following:

> It shall be unlawful for any person in the offer or sale of any securities
> (including security-based swaps) or any security-based swap agreement (as
> defined in section 78c(a)(78) of this title) by the use of any means or
> instruments of transportation or communication in interstate commerce or
> by use of the mails, directly or indirectly
>
> > (1) To employ any device, scheme, or artifice to defraud, or
>
> > (2) To obtain money or property by means of any untrue statement of a
> > material fact or any omission to state a material fact necessary in
> > order to make the statements made, in light of the circumstances
> > under which they were made, not misleading; or

> (3) To engage in any transaction, practice, or course of business which
>     operates or would operate as a fraud or deceit upon the purchaser

15 U.S.C.A. § 77q.  In deciding whether Congress intended to imply a right of action beyond

SEC enforcement, courts look to the factors set out in *Cort v. Ash*, 422 U.S. 66, 78 (1975), which

ask the following:

> (1) whether a plaintiff belongs to a class for whose benefit the statute was
>     enacted;
>
> (2) whether there is any indication that Congress intended to create a
>     private right of action under the statute;
>
> (3) whether implying a private right of action is consistent with the
>     underlying purposes of the legislative scheme; and
>
> (4) whether the cause of action is one traditionally relegated to state law
>     such that it is inappropriate to infer a cause of action based solely on
>     federal law.

*See id.*  Although the Supreme Court and Third Circuit have not ruled on the question of whether

§ 17(a) creates a private cause of action, "the 'clear majority' of district courts in the Third

Circuit have found that an implied right of action under § 17 does not exist."  *Trustcash*

*Holdings, Inc. v. Moss*, 668 F.Supp.2d 650, 655 (D.N.J. 2009);[5] *Berk v. Ascott Inv. Corp.*, 759 F.

Supp. 245, 250 (E.D. Pa. 1991) ("Most District Courts within the Third Circuit . . . have refused

to recognize a private cause of action under this section.").  In *Landry v. All American*

*Assurances Co.,* the Fifth Circuit found that Congress did not intend to create a private cause of

action under § 17(a) because the "legislative history of the 1933 Act makes no mention of civil

liability under [§] 17(a); congressional discussion of civil liability under the Act centers on [§§]

11 and 12."  688 F.2d 381, 389 (1982).  Similarly, the Ninth Circuit in *In re Washington Public*

---

[5] The Second, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have held that
there is no private cause of action under this statute.

*Power Supply System Securities Litigation* found that implying a private right of action under §

17(a) would be inconsistent with the statutory scheme of the Securities Act.  823 F.2d 1349,

1355 (1987).

Here, Plaintiff brings suit under § 17(a) of the Securities Act.  Plaintiff's only argument is

that, since she is a purchaser, her "standing is completely different from those of the [non-

purchaser] plaintiffs in the cited cases by Defendants."  (Doc. No. 22 at 30).  However, Plaintiff

does not discuss the relevant difference between a purchaser and a non-purchaser with respect to

§ 17(a) of the Securities Act, nor does Plaintiff provide additional argument or analysis of her

standing.  Since Plaintiff has not shown that her case differs from the majority of cases in the

circuits that have found no standing, Plaintiff has not demonstrated standing to bring a claim

under § 17(a) of the Securities Act, and Count III will be dismissed with prejudice.

2. <u>Plaintiff's Remaining Securities Fraud Claims</u>

In total, Plaintiff brings five claims for securities fraud.  Counts I, II, and III allege claims

under the Securities Act of 1933, 15 U.S.C. § 77a; Count IV alleges a claim under the Securities

Exchange Act of 1934, 15 U.S.C. § 78a; and Count V alleges a claim for violation of N.J.S.A

49:3-52.  The Court will address each group of claims separately.[6]

a. *Securities Act of 1933 Claims*

Defendants claim that Counts I and II should be dismissed because they are time-barred.

Counts I and II are brought under § 12 of the Securities Act of 1933, which is governed by § 13

of the Securities Act.  *See* 15 U.S.C. § 77m.  Section 13 imposes the following statute of

limitations on § 12 claims:

---

[6] As discussed above, Count III will be dismissed because §17(a) of the Securities Act of 1933
does not create a private cause of action.  Thus, Count III will not be re-discussed in this section
of the Opinion.

7

> No action shall be maintained to enforce any liability created under section 77k [§ 11] or 77*l*(a)(2) [§ 12(a)(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(a)(1) [§ 12(a)(1)] of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k [§ 11] or 77*l*(a)(1) [§ 12(a)(1)] of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) [§ 12 (a)(2)] of this title more than three years after the sale.

*Id.*

Plaintiff's claims are based on two instances of allegedly unlawful conduct occurring on different dates.  On April 18, 2008, Plaintiff wired $100,000 in payment to Defendant Cline based on an April 14, 2008 promise of shares in eSuites.  (Doc. No. 1 at para. 24).  Next, on April 25, 2008, Plaintiff invested an additional $100,000 in exchange for a promissory note.  (*Id.* at 26-27).

### i.   Count I

Count I alleges a violation of Section 12(a)(1).  Therefore, Plaintiff's claim must have been brought no later than one year after the unlawful conduct occurred and no more than three years after the security was *bona fide* offered to the public.  15 U.S.C. § 77m.  The conduct at issue, the purchases of the promissory note and stock, occurred in April of 2008.[7]  Plaintiff's Complaint was filed on March 28, 2014, nearly six years later.  Therefore, Count I is untimely and will be dismissed with prejudice.

---

[7] Plaintiff's Complaint Count I is based only on the purchase of the promissory note, but her Proposed Amended Complaint Count I is based on both the note and stock purchase.  (Doc. No. 1 at 11; Doc. No. 57 at 21).  Thus, the Court addresses both claims here.

### ii. Count II

Count II alleges two violations of § 12(a)(2).  Thus, these claims must be filed no more than one year after the fraudulent activity occurred or should have been discovered and no more than three years after the security was sold.  15 U.S.C. § 77m.  The claims in Count II stem from the April 25, 2008 purchase of the promissory note and the April 18, 2008 purchase of eSuite shares.  Plaintiff's Complaint was filed on March 28, 2014, nearly six years later.  Therefore, both claims in Count II are untimely and will be dismissed with prejudice.

### b. *Securities and Exchange Act of 1934 Claims*

Count IV alleges that Defendants violated § 10(b) of the Securities Exchange Act of 1934 in connection with both the stock purchase and the promissory note.  A claim under § 10(b) is timely if it is filed "not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation . . . or 5 years after the violation."  28 U.S.C. § 1658(b).  The alleged violations in this case occurred in April of 2008.  Plaintiff's Complaint was filed on March 28, 2014, nearly six years later.  Therefore, Count IV is untimely and will be dismissed with prejudice.

### c. *New Jersey Uniform Securities Law Claim*

Count V alleges that Defendants violated "various state statutes, including N.J.S.A. 49:3-52" in connection with Plaintiff's promissory note and share purchase.  (Doc. No. 1 at para. 63).  The statute of limitations for these claims states the following: "No person may bring an action under this section more than two years after the contract of sale or the rendering of the investment advice, or more than two years after the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later . . . ."  N.J.S.A. 49:3-71(g).

Here, more than two years have passed since the contract of sale or rendering of investment advice.  However, since this statute allows "whichever is later" of the two options, the Court must examine whether Plaintiff brought the claims within two years after the time Plaintiff knew or should have known of the existence of her cause of action.[8]  Defendants assert that Plaintiff should have been aware of a potential violation shortly after her April 2008 purchase of the shares when she did not receive any share certificates and by October 2009, the last date in which the promissory note would have matured.  (Doc. No. 15 at 8).  Plaintiff asserts that, because Defendants continued to send her misleading communications up until the summer of 2012, she was reasonably unaware of any fraudulent activity until counsel was hired to investigate.  (Doc. No. 22 at 21).  While a reasonable factfinder accepting Plaintiff's factual allegations and construing them in the light most favorable to Plaintiff could find that a reasonably diligent plaintiff would have relied on Defendants' communications and thus not discovered the fraud until some time after October 2009, a reasonably diligent plaintiff would have discovered the fraud before 2012, nearly three years after the maturation of the promissory note and more than four years after the sale of stock.  At the very latest, a reasonably diligent plaintiff would likely have known of the existence of fraud with respect to both the stock and promissory note sometime in 2010, a year after the note should have matured and two years after the sale of stock for which Plaintiff should have received some evidence of her ownership interest.  Since Plaintiff's Complaint was filed on March 28, 2014, roughly four years after a

---

[8] Plaintiff's other securities claims are governed by statutes of repose, which impose a fixed maximum time limit for asserting a claim regardless of when Plaintiff knew or should have discovered the violation.  Thus, Plaintiffs other securities claims, unlike Count V, are time-barred even if Plaintiff did not reasonably discover the fraud until 2010.

reasonably diligent plaintiff should have known of the fraud, Count V is untimely and will be dismissed with prejudice.

    3. <u>New Jersey Consumer Fraud Act ("CFA") Claim</u>

Count VIII of Plaintiff's Complaint alleges that, "[i]n selling the above described securities, the Defendants violated the provisions of the Consumer Fraud Act."  (Doc. No. 1 at para. 73).

The New Jersey Supreme Court has stated that "the CFA was not meant to reach the sale of securities."  *Lee v. First Union Nat. Bank*, 199 N.J. 251, 263 (2009); *see also Stella v. Dean Witter Reynolds, Inc*., 241 N.J. Super. 55, 75 (App. Div. 1990) ("[A] fraud in the sale of shares of stock or other securities is not within the compass of the [Consumer Fraud Act].").

Here, Plaintiff's claims under the CFA concern the "selling" of "securities."  (Doc. No. 1 at para. 73; Doc. No. 57 at para. 119).  Therefore, Count VIII will be dismissed with prejudice.

    4. <u>Securities Fraud, Consumer Fraud, and Common Law Fraud Claims</u>

Defendants also argue that Plaintiff's fraud claims are insufficiently pleaded.

To satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud, a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citations and quotations omitted).  "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of [] fraud with all of the essential factual background . . . that is, the who, what, when, where and how of the events at issue."  *In re Suprema Specialties Inc.*, *Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (quotations omitted). "Failure to inform each defendant as to the specific fraudulent acts alleged against it contravenes

the pleading requirements of Rule 9(b)." *Pappalardo v. Combat Sports, Inc.*, Civ. No. 11-1320 (MLC), 2011 WL 6756949, at *4 (D.N.J. Dec. 23, 2011) (citations omitted).

To state a claim for common law fraud in New Jersey, a plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Roll v. Singh*, Civ. No. 07-4136 FLW, 2008 WL 3413863, at *18 (D.N.J. June 26, 2008) (citations omitted).

Here, Defendants claim that Plaintiff's Complaint fails to identify with sufficient specificity which "Defendants" made misrepresentations and the precise nature of the misrepresentations because at several points throughout the Complaint, Plaintiff refers to "Defendants" generally without specifying the exact Defendant.[9] Plaintiff's Proposed Amended Complaint more carefully identifies the alleged acts of each specific Defendant but still fails to properly plead a fraud claim with respect to OCS Capital Defendants and Liberty Title Defendants. Defendants argue that Plaintiff's Proposed Amended Complaint does not assert that OCS Capital Defendants made any representations directed to Plaintiff that could be construed to induce reliance, and Plaintiff has not asserted otherwise in its briefs.[10] (Doc. No. 63 at 4). OCS Capital Defendants' only alleged involvement in the case is that OCS Capital sent a letter to Ellenburg, of eSuites, containing an allegedly false notice of bond issuance approval by the State of Arizona. (Doc. No. 57, Ex. Q, R). This letter, which was addressed only to Ellenburg, was then forwarded to Plaintiff by Ellenburg. (*Id.*). Plaintiff has not claimed and has alleged no facts

---

[9] Plaintiff argues in her brief that she is referring to all Defendants and that Defendants acted in concert. The Complaint, on its face, does not clearly refer to all Defendants acting as a group.
[10] Plaintiff did not file a Reply brief in response to Defendant's opposition to Plaintiff's Motion to Amend the Complaint.

to support an inference that OCS Capital Defendants intended the notice to be sent to Plaintiff or that OCS Capital Defendants intended Plaintiff to rely on those statements.  In addition, Plaintiff has not asserted nor can she show that she relied on such representations since this letter was forwarded in April of 2009, a year after Plaintiff had already purchased the stock and promissory note.

Similarly, with respect to Liberty Title Defendants, Plaintiff does not identify any specific misrepresentations made by these Defendants.  These Defendants' alleged involvement in the case is that Ellenburg, of eSuites, e-mailed Plaintiff directions for wiring $100,000 to Liberty Title to hold as an escrow agent and also sent Plaintiff an escrow agreement to sign, with Liberty Title and Forsyth listed as the escrow agent.[11]  (Doc. No. 57 at para. 34).  The Proposed Amended Complaint does not assert any direct communications between Liberty Title Defendants and Plaintiff.  Plaintiff's Proposed Amended Complaint asserts that Plaintiff "delivered $100,000 in reliance upon the representation that it would be held in escrow" and that Liberty Title Defendants failed to inform Plaintiff of the release and "whereabouts" of her funds. (*Id.* at para. 74(c), 112).  However, these claims are inadequately pleaded for two reasons.  First, the terms of the escrow agreement do not require notice to or consent by Plaintiff before the release of her funds to eSuites.  (*Id.*, Ex. H)  Second, instead of wiring $100,000 to Liberty Title to hold as an escrow agent as directed by Ellenburg's e-mail, Plaintiff apparently sent a $100,000 check payable to "eSuites Hotels" on April 25, 2008, which suggests a direct transfer of funds to eSuites.  (*Id.* at para. 40).  Plaintiff has not disputed Defendants' arguments as she did not file a reply brief responding to these assertions.  Thus, Plaintiff's Proposed Amended Complaint fails

---

[11] The only signature on the agreement is Plaintiff's.  (Doc. No. 57, Ex. H).

to properly allege any material misstatement or fraud with respect to Liberty Title Defendants.[12]

Count VI will be dismissed with prejudice with respect to OCS Capital Defendants and Liberty

Title Defendants.  However, Count VI will not be dismissed with respect to the remaining

Defendants.[13]

    5.  <u>Breach of Contract Claim</u>

Count VII of Plaintiff's Complaint alleges that Defendants breached the agreement

embodied in the promissory note.  Defendants argue that this claim must be dismissed because

the promissory note was subject to several conditions precedent, and Plaintiff has not alleged the

satisfaction of such conditions precedent.

"A condition precedent is a fact or event occurring subsequently to the making of a valid

contract and which must exist or occur before there is a right to immediate performance, before

there is a breach of contract duty or before the usual judicial remedies are available."

*Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 104 N.J. Super. 250, 262 (Ch.

Div. 1969) (citation omitted); *see also* Federal Rule of Civil Procedure 9(c) ("Conditions

Precedent.  In pleading conditions precedent, it suffices to allege generally that all conditions

precedent have occurred or been preformed . . .").

Here, the Promissory Note states that "[u]nless and until the Senior Obligations have

been paid in full and all commitments to extend future financial accommodations under the

---

[12] This conclusion is unchanged by the fact that the escrow agreement states: "By its signature below, Escrow Agent acknowledges receipt from Lender of one hundred thousand dollars."  The agreement attached to Plaintiff's Proposed Amended Complaint is unsigned by the escrow agent and furthermore, Plaintiff signed this agreement on the same day that she sent her $100,000 check, thus precluding the possibility that the escrow agent had previously received the money. (Doc. No. 57 at para. 40, Ex. H).

[13] As discussed in a later section, all claims against Bryan Langton of eSuites will be dismissed. Thus, Count VI will be dismissed against Bryan Langton.

Senior Documents shall have been terminated, Borrower shall not make any direct or indirect payment, prepayment, redemption or distribution with respect to principal or interest on this Note." (Doc. No. 1, Ex. B). Furthermore, "Lender . . . shall not take, sue for, or demand from Borrower payment of all or any portion of this note" as "long as the Senior Obligations remain outstanding." (*Id.*). Neither Plaintiff's Complaint nor her Proposed Amended Complaint allege that these conditions precedent have been met. Therefore, the breach of contract claim, Count VII, will be dismissed without prejudice.

In addition, "to establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J.Super. 245, 265 (App. Div. 2007). Plaintiff's Complaint and Proposed Amended Complaint do not allege that OCS Capital Defendants and Liberty Title Defendants were parties to the agreements involving the sale of stock and promissory note, thus Plaintiff's breach of contract claims against these Defendants will dismissed with prejudice. (Doc. No. 57 Counts VIII, IX).

6. RICO Claim

Count IX of Plaintiff's Complaint alleges that "Defendants' actions, as set forth herein, are in violation of the Racketeering Influences and Corruption Organization Act of 1970 [RICO], 18 U.S.C.A. Section 1961." (Doc. No. 1 at para 77).

To state a private cause of action under RICO, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (citation omitted). A pattern of racketeering activity requires "at least two predicate acts of racketeering activity." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004); 18 U.S.C. § 1961(1). The Private Securities Litigation Reform Act

amended RICO by expressly barring the use of securities fraud as a predicate act.  18 U.S.C.A. § 1964(c).  The Private Securities Litigation Reform Act provides, in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . , except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

*Id.*  A plaintiff "cannot avoid the RICO Amendment's bar [on the use of securities fraud as a predicate act] by pleading mail fraud, wire fraud and bank fraud as predicate offenses [] if the conduct giving rise to those predicate offenses amounts to securities fraud."  *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) (finding that a RICO claim based on an alleged Ponzi scheme was barred); *see also* H.R. Rep. No. 369, 104th Cong., at 47, 1995 ("the Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud").

Here, Plaintiff claims that Defendants devised a scheme to "defraud Plaintiff and to induce her to pay a sum of $200,000 for 'stock' in eSuites and for the purchase of unregistered securities."  (Doc. No. 1 at para. 78).  Plaintiff also alleges mail and wire fraud.  (*Id.* at para. 87). However, both of these acts grew out of the underlying securities fraud.  Therefore, Plaintiff's RICO claim will be dismissed with prejudice.  *See Metz v. United Counties Bancorp*, 61 F.Supp.2d 364, 370–71 (D.N.J. 1999) (mail and wire fraud may not be used as predicate acts if the alleged fraud is based on conduct that would have been actionable as securities fraud).

### d.  eSuites Defendant Bryan Langton

Plaintiff's Complaint and Proposed Amended Complaint name Bryan Langton, Vice Chairman of eSuites, as a Defendant.  However, Plaintiff has not specifically alleged that

Langton made any representations to her nor that Langton was involved in the execution of the promissory note or sale of stock.  Instead, Plaintiff's pleadings generally assert that Langton conspired with the other Defendants or assisted in the alleged conspiracy, without identifying any factual allegations against him.  (Proposed Amended Compl. ¶¶ 71, 72).  Thus, all claims against Langton, including those newly alleged in Plaintiff's Proposed Amended Complaint, will be dismissed with prejudice.

### E. Remaining Motions

1. <u>Defendants' Motion to Strike Plaintiff's Opposition Brief</u>

In light of the Court's ruling on Defendants' Motions to Dismiss, Defendants' Motion to Strike Plaintiff's opposition brief is moot.

2. <u>Plaintiff's Motion to Amend the Complaint</u>

Plaintiff's Proposed Amended Complaint re-alleges the assertions in the original Complaint, with the following changes: (1) Plaintiff adds a claim of fraud in the inducement; (2) Plaintiff's breach of contract claim is separated into three claims, under the promissory note, sale of stock, and escrow agreement, respectively; and (3) Plaintiff adds a claim of aiding and abetting.  Each of these proposed amendments is addressed below.

Under Rule 15(a), leave to amend plaintiff's complaint is freely granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

i.     Fraud in the Inducement

Count VII of Plaintiff's Proposed Amended Complaint asserts fraud in the inducement, citing numerous communications and omissions by eSuites Defendants and Mr. Berger to Plaintiff in connection with the promissory note and sale of stock.  eSuites Defendants have not opposed Plaintiff's Motion to Amend on this particular Count.  (Doc. No. 62).  However, for the reasons stated above, Plaintiff's Proposed Amended Complaint fails to properly allege that OCS Capital Defendants and Liberty Title Defendants made any representations to Plaintiff to induce her to make a loan to eSuites or to purchase its stock.  Nor does Plaintiff properly assert reliance on any such representations.  Thus, Plaintiff's Motion to Amend the Complaint with respect to fraud in the inducement will be denied with respect to OCS Capital Defendants and Liberty Title Defendants, but granted with respect to the remaining Defendants.[14]

ii.     Breach of Contract: Promissory Note, Sale of Stock, and Escrow Agreement

Plaintiff's Proposed Amended Complaint re-alleges a breach of contract claim under the promissory note.  As stated above, the Proposed Amended Complaint fails to assert that the conditions precedent to the agreement have been satisfied.  In addition, it fails to allege that OCS Capital Defendants and Liberty Title Defendants were parties to the agreement.  Therefore, Plaintiff's Motion to Amend the Complaint with respect to breach of contract under the promissory note will be denied with respect to OCS Capital Defendants and Liberty Title Defendants.

Plaintiff's Proposed Amended Complaint also asserts a breach of contract claim under the alleged sale of eSuites' stock.  Plaintiff's Proposed Amended Complaint fails to allege that OCS Capital Defendants and Liberty Title Defendants were parties to the sale.  Thus Plaintiff's

---

[14] As stated above, Plaintiff will not be granted leave to assert claims against Bryan Langton.

Motion to Amend the Complaint with respect to breach of contract under the sale of eSuites'
stock will be denied with respect to OCS Capital Defendants and Liberty Title Defendants.

eSuites Defendants assert that Plaintiff should not be granted leave to amend her
Complaint to include a breach of contract claim because she has not alleged any legally
cognizable breach.  In her Proposed Amended Complaint, Plaintiff asserts that she did not
receive any stock certificates or other corporate documents evidencing proof of stock ownership.
Defendants respond that Plaintiff's receipt of Schedule K-1 forms indicates that she had an
ownership interest in eSuites.  (Doc. No. 57 at para. 104; Doc. No. 62 at 14).  In addition, to the
extent that Plaintiff alleges a breach based on the fact that she did not receive the promised 40
percent return, Defendants allege that such a loss is not a recognized breach of contract, rather it
is merely an investment that did not pay off.  (Doc. No. 62 at 14).  Plaintiff has not responded to
these arguments as she did not file a reply brief in support of her Motion to Amend.  Thus,
Plaintiff's Motion to Amend the Complaint with respect to breach of contract under the sale of
eSuites' stock will be denied with respect to the remaining Defendants.

Count X of Plaintiff's Proposed Amended Complaint asserts a breach of contract claim
under the alleged Escrow Agreement between eSuites, Liberty Title Defendants, and Plaintiff.
Plaintiff asserts that Forsyth and Liberty Title accepted $100,000 to be held in escrow, pursuant
to the escrow agreement, but Plaintiff never received any information about the money's release
from escrow.  However, the terms of the agreement do not require notice to or consent of
Plaintiff before releasing any funds.  Subsection B-3 of the agreement states that "The Escrow
Agent shall cause the Escrow Funds to be released to the Borrower and Lender as directed by
written notice signed by both the Chairman, Gerald D. Ellenburg, and Vice Chairman, Bryan
Langton, of Borrower [i.e., eSuites Hotels]."  (Doc. No. 57, Ex. H).  Thus, Plaintiff's Proposed

Amended Complaint fails to properly assert a breach of contract under the escrow agreement, and her Motion to Amend the Complaint to add Count X, "Breach of Contract – Escrow Agreement" will be denied with respect to all Defendants.

iii.    Aiding and Abetting

Finally, Plaintiff's Proposed Amended Complaint asserts a claim of aiding and abetting against all Defendants.  To assert a claim of aiding and abetting fraud, a plaintiff must "establish[] the existence of an independent wrong, knowledge of that wrong and substantial assistance on the part of the aider or abettor to effectuate that wrong." *State of N.J., Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Inst'l, Inc.*, 387 N.J.Super. 469, 481 (App. Div. 2006); *see also Prudential Ins. Co. of America v. Credit Suisse Sec. (USA) LLC*, Civ. No. 12-7242 (KSH), 2013 WL 5467093, at *19 (D.N.J. Sept. 30, 2013).  eSuites Defendants have not advanced any arguments opposing Plaintiff's filing of her aiding and abetting claim. (*See* Doc. No. 62).  However, OCS Capital Defendants and Forsyth oppose granting Plaintiff leave to add a claim of aiding and abetting to her Complaint.  In light of the alleged communications between Plaintiff, eSuites Defendants, and Berger, Plaintiff's Proposed Amended Complaint does assert specific facts sufficient to support a claim of aiding and abetting against these Defendants.   However, the Proposed Amended Complaint does not establish a plausible basis on which the Court can infer that OCS Capital Defendants and Liberty Title Defendants had knowledge of any fraud nor that they provided "substantial assistance."  Thus, Plaintiff's Motion to Amend the Complaint to add a claim of aiding and abetting against OCS Capital Defendants and Liberty Title Defendants will be denied, but such a claim may be asserted against the remaining Defendants.

CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss will be granted with prejudice with respect to Counts I, II, III, IV, V, VIII, and IX of Plaintiff's Complaint and with respect to all claims against OCS Capital Defendants, Liberty Title Defendants, and Bryan Langton and denied with respect to Count VI, common law fraud, against the remaining eSuites Defendants and Berger. Defendants' Motions to Dismiss will be granted without prejudice with respect to Count VII, breach of contract under the promissory note. Plaintiff's Motion to Amend the Complaint will be granted only with respect to claims that are not being dismissed with prejudice. Plaintiff will be granted leave to amend her Complaint to assert common law fraud, fraud in the inducement, and aiding and abetting against the remaining eSuites Defendants and Berger.


*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.